## State of Vermont v. Robert E. Dragon, Jr.

[292 A.2d 826]

No. 87-71

Present: Shangraw, C.J., Barney, Keyser and Daley, JJ., and Larrow, Supr. J.

Opinion Filed June 6, 1972

*Frank G. Mahady,* State's Attorney, and *Paul F. Hudson,* Deputy State's Attorney, for the State.

*Glover & Fink,* Ludlow, for Defendant.

**Shangraw, C.J.** The defendant was convicted of breaking and entering in the nighttime on or about April 19, 1970, a building belonging to Poma Aerial Tramway, Inc., in which personal property, the subject of larceny, was then and there situated with intent to commit larceny, in violation of 13 V.S.A. § 1201.

Trial by jury on March 25, 1971, in the District Court of Vermont, Unit No. 6, Windsor Circuit, resulted in a verdict of guilty. Sentence was imposed May 4, 1971. The defendant has appealed to this Court for review.

The allegations of the complaint were admitted by the defendant during the trial. The defense sought to be invoked by him was that of entrapment. Defendant's appeal presents three issues.

It is first contended by the defendant that the trial court committed error by refusing to initiate its subpoena power regarding certain witnesses whose testimony was to be offered at time of trial.

The right of an accused to obtain witnesses in his behalf is guaranteed by Amendment VI of the United States Constitution and Article 10 of the Vermont Constitution. This is fur-

ther implemented by the statement of the rights of an accused found in 13 V.S.A. § 6501. In a criminal trial of an indigent defendant, provision is made for witnesses to be summoned by the prosecuting officer at the expense of the State as the court deems necessary to secure the defendant an impartial trial. 13 V.S.A. § 6602. This section is made applicable to district courts by 13 V.S.A. § 6506 and Act No. 194, § 10 (1965). Provision is also made in 13 V.S.A. Chapter 203, subchapter 2, to secure the attendance of material witnesses from without the state in criminal cases.

Defendant requested the attendance in court as witnesses fifteen persons residing in the State of Vermont, and three out-of-state witnesses. The three requested witnesses residing outside the State of Vermont were Judge Dier, Lake George, New York; Calvin Trudo (Trudeau), U.S. Penitentiary, Leavenworth, Kansas; and Benjamin Thompson, former Chief of Police, Lebanon, New Hampshire.

Hearings were held by the court as to whether the presence of the requested witnesses was necessary to secure the defendant an impartial trial. A final hearing was held on March 19, 1971, and by the court's order dated March 22, 1971, it was determined that the defendant, from poverty, was unable to procure the attendance of witnesses in his behalf. It was ordered that the fifteen witnesses residing in Vermont be summoned by the prosecuting officer at the expense of the State.

As to the three out-of-state witnesses the court determined that it was not necessary that they be called "to secure the respondent an impartial trial." Therefore, as to defendant's first contention, the sole issue before this Court is whether the lower court erred in refusing to summon these three witnesses.

The defendant relied solely on entrapment as a defense to the prosecution here considered. Following is his contention as appears in the transcript of the hearing held by the court on March 19th:

> "The defense, your Honor, as the court is again I am sure familiar with, is that of entrapment and the entrapment which we will seek to support at the time of trial as being a continuing entrapment, one that has extended over a period of time and the breaking and en-

tering charge which we'll be confronted with next week is only a small part, a small segment of the entire picture and once again in order that the jury is able to fully understand and comprehend what is going on here and we feel it is their right to know what has transpired and other events will be necessary to enlighten them."

The defendant urges error on the part of the trial court in not proceeding under 13 V.S.A. § 6641, *et seq.*, to obtain the production of the three out-of-state witnesses. It is his contention that he was prejudiced by such denial in that the jury never had the opportunity to hear fully from persons having personal knowledge of events comprising the entire scheme, devise, lure and subterfuge practiced upon him by the officers of the law.

Other than the foregoing general statement in defendant's brief, we are not therein aided by him in determining the precise contents of the proposed testimony of these three witnesses.

By reference to the transcript, the State, however, has called to our attention hearings held by the court at which times the defendant, under the Uniform Act, 13 V.S.A. § 6641, *et seq.*, sought to secure the attendance of the three witnesses from without the State of Vermont. See generally *Emrick* v. *Connarn*, 128 Vt. 202, 260 A.2d 380 (1969).

At the hearing held on March 12, 1971, the defendant urged the presence of Judge Dier, of Lake George, N.Y., by stating:

"Judge Dier held court in which Mr. Dragon was arraigned for an offense having been committed in New York and as we understand it Judge Dier had conversation with certain individuals from the City of Burlington and elsewhere who suggested certain arrangements, deals, policies that surrounded the Dragon situation which I might add I don't think were revealed at disposition."

At the hearing held on March 19, 1971, the defendant again urged the presence of Judge Dier by stating:

"We suggest that his Honor, Judge Dier, knows the situation that transpired in his very own Court that being the arrest of Mr. Dragon and an establishment of high

bail, subsequent to that bail being set it is my understanding that Judge Dier had conversation, spoke with officials in the State of Vermont, who suggested arrangements that had been and continued going on and that basis was used for allowing Mr. Dragon to be released on his own recognizance. Again we have a transaction and as such it makes up part of the entire picture and should be conveyed to the jury who hears this case. This is part of the whole scheme continuing prior to this particular alleged offense."

At the hearing of March 19, 1971, defendant claimed that the testimony of Calvin Trudo (Trudeau) was material and urged his presence by stating:

"As to Calvin Trudeau prior to his incarceration a transaction was accomplished in the city of Burlington relative to the arrest of another individual, Roy Girard, and this arrest was accomplished initially through using the respondent as intermediary again pointing out and illustrating the arrangement that had existed. We suggest that Mr. Trudeau was in company of the respondent while he had various conversations with officials, employees of the State relative to this arrest, witnessed the arrest and further conversation personally between the respondent and others. His testimony is vital, vital for testifying to what did happen and also important because upon deposition of certain individuals involved in this transaction seem to have no memory of it. We are well aware that various employees of the State are reluctant to divulge some of this story so it is necessary to come out through others testimony. This is the reason why such testimony is of such great importance."

Also at the hearing of March 19th, the defendant sought the presence of Benjamin Thompson at respondent's trial claiming that his testimony was material in the following respects:

"Benjamin Thompson is no longer employed, but at the time of certain breaking and entering which did occur in Lebanon, he was Chief of Police, though he is no longer employed as Chief of Police and he knows certain arrange-

ments between the respondent and Mr. Beaulieu through and for the State of Vermont. He was present at the scene of the breaking and entering. He knows of personal conversation between various individuals, including Leahy and Beaulieu. He observed in fact the breaking and entering as well as apprehension of the criminals excluding the respondent and we feel once again this is an integral part of the theory and the jury is entitled to know what went on leading up to this particular case, the whole thing constitutes the entire picture of entrapment. The respondent is entitled to have this individual here to testify what he knows. Any testimony in that regard would not be capable of being introduced, only the individual involved has the capacity to testify as to what went on."

The State contends that the court properly denied defendant's motion to summon the three out-of-state witnesses. It claims that the proposed testimony of Judge Dier, Calvin Trudo (Trudeau) and Benjamin Thompson, as revealed by the contents of defendant's motion hereinbefore related in this opinion is lacking and void of any relevance or materiality on the defense of entrapment in this case.

 Entrapment has been defined as the inducement of one to commit a crime not contemplated by him, for the mere purpose of instituting a criminal prosecution against him. *State v. White,* 129 Vt. 220, 224, 274 A.2d 690 (1971). See also *Sorrells* v. *United States,* 287 U.S. 435, 454 (1932). The type of entrapment which the law forbids is the inducing of another to violate the law. There is a clear distinction between inducing a person to do an unlawful act and setting a trap to catch him in the execution of a criminal plan of his own conception. 21 Am.Jur.2d *Criminal Law* § 143.

It appears to be the general rule that if the criminal intent originates in the mind of the accused, the fact that an opportunity is furnished, or that the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him therefor, constitutes no defense. See Entrapment to Commit Crime, Annot., 86 A.L.R. 263–274 (1933).

■ Entrapment occurs only when the criminal conduct is "the product of the creative activity" of law-enforcement officials,—that is, where they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute. The function of law enforcement officers is to prevent crime and apprehend criminals, not to manufacture evidence. *Sherman* v. *United States,* 356 U.S. 369, 372, 2 L.Ed.2d 848, 78 S.Ct. 819 (1958).

Under the Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Cases, material witnesses from without the state may, under certain conditions, be summoned to attend and testify in criminal prosecutions in this State. The object of the Uniform Act is to promote the enforcement of the criminal laws and the administration of justice in criminal proceedings in the several states. 97 C.J.S. *Witnesses* § 17. See cases there cited.

■ Before invoking the Uniform Act on behalf of an accused, the court is entitled to be informed of what testimony may be expected of the prospective witnesses. 97 C.J.S. *Witnesses* § 6. The court is not required to issue compulsory process for any one whom an accused may designate as a witness. Such process is only required for competent and material witnesses whose expected testimony will be material to defendant's defense. *People* v. *Nash,* 36 Ill.2d 275, 222 N.E.2d 473, 474, *cert. denied,* 389 U.S. 906 (1967). The burden is upon the defendant to show the materiality and, without such proof, he is not entitled to have benefit of compulsory process to secure witnesses from without the state under the statute. *State* v. *Emrick,* 129 Vt. 475, 282 A.2d 821, 824 (1971). See Annot., 44 A.L.R.2d 732 (1955) and cases therein cited.

As is noted from the foregoing, the defendant merely generalized concerning the proposed testimony of the three out-of-state witnesses. He failed to show to the court how these witnesses were material to the defense of entrapment, the defendant sought to interpose against the offense with which he was charged, namely, the crime of burglary in the nighttime in Woodstock, Vermont.

Moreover, during trial no evidence was received indicating any inducement of the law enforcement officers in any way

influencing the defendant to commit the crime of burglary as charged.

Notwithstanding the claimed erroneous curtailment by the court of evidence on the issue of entrapment, defendant testified that for compensation he arranged with Chittenden County and City of Burlington law enforcement officers to assist in the reduction of crime in those areas. The offense by which the defendant was arrested took place in Woodstock, Vermont, not in the Burlington area.

By reason of the defendant's failure to show how the proposed testimony of the three out-of-state witnesses was material to his defense, we can find no error in the lower court's determination that the witnesses were not necessary to secure the defendant an impartial trial.

The defendant secondly contends that the trial court continuously and erroneously sustained the State's objection to proper testimony of the respondent in regard to his defense of entrapment and thereby deprived him of presenting a full and adequate defense. The State's objection was based upon the ground of the relevancy of such evidence.

██ The defense sought to be raised by the defendant was that of entrapment. As such this became a material issue in the case. In order for evidence to be relevant to this issue it must tend to support the proposition for which it was offered. *Curry* v. *Rivers*, 122 Vt. 212, 213, 167 A.2d 89 (1960). See C. McCormick, Evidence § 185 (2d ed. E. Cleary 1972). To be admissible evidence proffered must not only have logical relevance but have probative weight. *Long* v. *Leonard*, 113 Vt. 258, 261, 32 A.2d 679 (1943).

It is generally claimed that disclosure, by the defendant, of previous discussions, dealings and "arrangements" between him and officers of the State of Vermont, was essential to the defense of entrapment in that the crime of which he was convicted, was only part of a broader scheme. This evidence related to other crimes; none of which dealt with the inducement on the part of law enforcement officials to lure the defendant into an offense not otherwise contemplated by him. More specifically the evidence showed that the offense for which the defendant was charged was a frolic on his own, done without the consent or knowledge of any law enforcement officials at or before the time the offense was committed.

None of the evidence ruled out offered any support for the proposition that this Woodstock burglary was instigated, approved or even known to any law enforcement officer. Evidence not pertinent to this episode was properly excluded by the trial court. In such cases, unless there is a demonstration of abuse, discretionary rulings will not be disturbed by this Court. *Curry* v. *Rivers, supra,* 122 Vt. at 214; *Holton Estate* v. *Ellis,* 114 Vt. 471, 479, 49 A.2d 210 (1946). The burden is on the excepting party to show that the error complained of injuriously affected his rights. *Lattrell* v. *Swain,* 127 Vt. 33, 36, 239 A.2d 195 (1968).

In defendant's third assignment of error he contends that the court erroneously charged that the defendant was required to prove the elements of entrapment by proof beyond a reasonable doubt. By so doing, the burden of proof cast upon the defendant was too great.

Entrapment is an affirmative defense and the accused has the burden of establishing it. It imposes on him the burden of going forward with evidence showing that he was induced to commit the act for which he is being prosecuted.

On the record in this case, entrapment was not an issue raised by any evidence in the case, and, if there was any error in the trial court's instructions on this subject, it was harmless. Since the record does not disclose a sufficient showing that the defendant was induced to commit the crime charged, we cannot conclude that he was prejudiced by the charge on the burden of proof, even though the burden of proof called for was too great. *Lopez* v. *United States,* 373 U.S. 427, 434–37 (1963).

*Judgment affirmed.*