### State of Vermont v. Roy Girouard

[298 A.2d 560]

No. 131-71

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed December 5, 1972

*James M. Jeffords,* Attorney General, and *William T. Keefe,* Assistant Attorney General, for the State.

*Douglas Richards, Esq.,* Springfield, for Defendant.
*Roy Girouard, pro se.*

**Daley, J.** The defendant, Roy Girouard, was charged in the District Court of Vermont, Unit No. 6, Windsor Circuit, with the crime of breaking and entering in the nighttime at the Poma Aerial Tramway, Inc., a business establishment located in Woodstock, Vermont, on April 20, 1970, a violation of 13 V.S.A. § 1201.

At his arraignment the defendant entered a plea of not guilty to the offense. After the substitution of assigned attorneys on two occasions, and the completion of pre-trial discovery, the matter was tried by jury on May 25–27, 1971. On May 27, 1971, the jury returned a verdict of guilty as charged. From the judgment of guilty entered on the verdict, the defendant appeals to this Court.

The defendant's appeal focuses upon the refusal of the trial court to allow certain testimony on the defense of entrapment which the defendant sought to invoke as a defense at his trial and its subsequent refusal to instruct the jury on

that defense. For this reason we will discuss the entrapment issues first, and then those issues which the defendant has brought before us in a separate brief filed on a *pro se* basis.

The defense of entrapment raised by the defendant centered on the relationship between Lieutenant Beaulieu of the Burlington Police Department and one Robert E. Dragon, Jr., who participated in the commission of the crime with the defendant. Dragon was earlier tried, found guilty, and sentenced for his part in this crime; on appeal, his conviction was affirmed. See *State* v. *Dragon*, 130 Vt. 334, 292 A.2d 826 (1972).

Testimony as to this relationship was necessary because entrapment is defined as criminal conduct which is the product of the creative activity of law enforcement officials; that is they implant in the mind of an innocent person the disposition to commit the alleged offense, not otherwise contemplated by him, thereby inducing its commission for the mere purpose of instituting a criminal prosecution against him. *State* v. *Dragon, supra,* 130 Vt. at 340; *Sherman* v. *United States,* 356 U.S. 369, 372 (1958); *Sorrells* v. *United States,* 287 U.S. 435, 454 (1932). It is well settled that the defense of entrapment does not extend to acts of inducement on the part of a private citizen who is not an officer of the law or an agent thereof. See *e.g. Henderson* v. *United States,* 237 F.2d 169, 175 (5th Cir. 1956).

Thus, in order to resort to the affirmative defense of entrapment, the defendant had to introduce testimony tending to show Dragon was acting as an agent of the law when he participated in the breaking and entering of Poma Aerial Tramway, Inc., with Dragon. This testimony would then be used to show the inducement to commit the crime was the result of the creative activity of law enforcement officials. Indeed, in *State* v. *Dragon, supra,* 130 Vt. at 341, it was the failure of Dragon to show the inducement to commit the crime flowed directly from a law enforcement official that led to entrapment not being an issue properly for the cognizance of the jury.

The testimony which had been introduced prior to the court's refusal to allow further exploration of the relationship between Lieutenant Beaulieu and Dragon revealed Dragon was employed as a paid informer by the Burlington Police Department. The testimony elicited from Dragon was to the effect he and Lieutenant Beaulieu had discussed Girouard "quite a bit" during the time Dragon worked as a paid informer, and as a result of these conversations Dragon had "set up" the defendant. When the defense sought to have Dragon explain to the jury what "set up Roy Girouard" meant to him, objection was made and sustained. Dragon was thereafter precluded from such explanation.

Lieutenant Beaulieu later testified that Girouard's name came up during these discussions with Dragon concerning criminal activity in the Burlington area, but he had never indicated that he wished Dragon to "nail" Girouard. When counsel for the defendant sought to explore the nature and extent of Dragon's involvement with the Burlington Police Department through the examination of Lieutenant Beaulieu, the following discourse transpired:

> "Q. To your knowledge, Lt. Beaulieu, were there any actions involving criminal activities in which Robert Dragon was a participant and in which your department or some other department was a participant?
>
> A. Yes, sir.
>
> Q. And, would you describe for us what these were and when they happened?
>
> *State's Attorney*: We would object on the grounds of irrelevance. We are trying the Poma Aerial Tramway's case, not any of these other cases in Lebanon, New Hampshire, or Burlington, Vermont.
>
> *Mr. Richards*: If the Court please, we think this is quite relevant, and it goes to the fact that Lt. Beaulieu has already established Mr. Dragon was a paid informer and again we are trying to establish there was a type of conduct established between Lt. Beaulieu and Mr. Dragon and ultimately involved Mr. Girouard.
>
> *State's Attorney*: I think they have to show, Your Honor, we have been around this many times now, I

think they have to establish that Mr. Dragon was a police informer with regard to this particular crime. We should stick to this crime.

*Judge Ellison*: We will sustain the State's objection."

The state of the evidence prior to the sustaining of this objection was to the effect that the witness Dragon had suggested breaking into the place in question; he directed the route to be followed and the method and mode of entry into the building; the defendant had no familiarity with the Woodstock area in general and the location of the place where the alleged criminal activity took place in particular; and the record does not disclose that the defendant intended to commit this crime prior to the suggestion made by Dragon. Under such a state of the evidence, the agency or lack of agency between Dragon and the police became critical to the defense of entrapment sought to be interposed by the defense.

■ The line of questioning, and the testimony sought, which was cut off by the court below, had a direct bearing on the existence or non-existence of an agency relationship between Lieutenant Beaulieu and Dragon at the time the crime charged against the defendant was alleged to have occurred. Hence, such testimony was highly relevant and material to the defense of entrapment, and its exclusion was prejudicial to the rights of the defendant. *State* v. *Morse,* 127 Vt. 137, 141, 241 A.2d 323 (1968) ; *State* v. *Goyet,* 120 Vt. 12, 29, 132 A.2d 623 (1957).

At the close of the evidence the defendant seasonably moved the court to charge the jury on the issue of entrapment. The court, in its instructions to the jury, not only did not follow the defendant's request to charge, but also withdrew this issue from the consideration of the jury. By withdrawing the issue of entrapment from the jury, the trial court, in effect, ruled as a matter of law that the issue of entrapment did not arise from the evidence presented.

■■ Although entrapment may become a question of law when the facts are undisputed, see *State* v. *Dragon, supra,* ordinarily, as here, it is a question of fact which must be

submitted to the jury. *United States* v. *Grimes*, 438 F.2d 391, 393 (6th Cir. 1971), *cert. denied*, 402 U.S. 989 (1971). A review of the record reveals that there was sufficient evidence raising the issue of entrapment before the jury. As a consequence of the trial court's failure to fulfill its duty to submit to the jury this essential issue of fact and instruct it on the law, the defendant was denied the full, fair, and correct charge on all the issues which he was entitled to. *State* v. *Audette*, 128 Vt. 374, 378, 264 A.2d 786 (1970); *State* v. *Coburn*, 122 Vt. 102, 105, 165 A.2d 349 (1960).

We shall next answer the points of error in the order in which they were raised in the defendant's *pro se* brief.

■■ The defendant points out that the information issued against him was not specific or exact as to the date of the offense, and the date on the information was changed eight months following issue. Where the date of commission is not the essence of the offense, the failure to state the specific date in the indictment does not invalidate it. 13 V.S.A. § 6553; *State* v. *Daniels*, 129 Vt. 143, 144, 274 A.2d 480 (1971). The date that the offense is committed is not an essential element to the offense here charged. See 13 V.S.A. § 1201. To cure such defect, the state will be allowed to amend its pleadings. 13 V.S.A. § 6554; *State* v. *Daniels*, *supra*. This is what the state did, and no error is here shown.

■ The defendant alleges that the bail called for was excessive so as to deny him the right to bail. The determination of the amount of bail set is one of judicial discretion, controlled, of course, by certain guidelines. 13 V.S.A. § 7553a; *State* v. *Toomey*, 126 Vt. 123, 124–25, 223 A.2d 473 (1966). To maintain error, the defendant must show an abuse or withholding of discretion by the court. *State* v. *Morrill*, 127 Vt. 506, 508, 253 A.2d 142 (1969). The defendant presents us with only—"Before this conviction, Appellant had no counts of felony." The accused's previous record is only one of many elements upon which the determination of the conditions of release is made. 13 V.S.A. § 7553a(a)(5). There is no showing by the defendant the determinations that the court made on the other elements to be considered. The defendant has failed to show an abuse of discretion by the court.

The defendant complains that he was denied the right to a speedy trial, as ten months elapsed between arrest, July, 1970, and trial, May, 1971. A review of the record reveals the following series of events. In August, 1970, less than one month after arrest, defendant made a *pro se* demand for a speedy trial without conferring with his assigned counsel. It is apparent that counsel was not prepared to go to trial at this time, for in September, 1970, less than one month after this demand, he made a motion to take depositions and for production to discover the evidence that the state intended to offer. The depositions were taken within the next three months, and the state complied with the demands for production. In January, 1971, several more motions were made by the defense, including a motion to quash the information, a notice of objection and motion to strike (concerning changes made by the state in certain deposed testimony), and another motion to take depositions and for production (to discover additional evidence that the state intended to offer at trial). However, defendant's first counsel was permitted to withdraw after a hearing was held on his motion to withdraw based on a conflict of interests. A second counsel was assigned, and about one week after he was so assigned, he was permitted to withdraw, due to strong objections and complete unwillingness on the part of the defendant to cooperate in the preparation of his defense. By the end of January, 1971, a third and final counsel was assigned. By the beginning of April, 1971, this counsel was sufficiently prepared to argue two pending motions made by the preceding counsel, and was allowed to take the depositions of the additional state witnesses and obtain further evidence from the state. In May, 1971, a motion was made by the defense for a change of venue, which was denied after hearing. Five days after the hearing of this motion, trial began.

In *Barker* v. *Wingo*, 407 U.S. 514, 33 L.Ed.2d 101, 92 S.Ct. 2182 (1972), a "balancing factors" test was approved to determine whether there is a deprivation of the right to speedy trial, rejecting generally the concept that such a right can be waived by the defendant. However, in qualifying the rejection of the waiver doctrine, Justice Powell, writing for the Court, stated:

"But the rule we announce today which comports to constitutional principles, places the primary burden on the courts and the prosecutors to assure that cases are brought to trial. We hardly need to add that if the delay is attributable to the defendant, then his waiving may be given effect under the standard waiver doctrine. . . ." 92 S.Ct. at 2191.

The delay which the defendant complains of flowed, not from the prosecution or the court, but from the defense. Under these circumstances, the defendant has not here shown that he has been deprived of the right to a speedy trial by other than his own actions. See *State* v. *Cabrera*, 127 Vt. 193, 195–96, 243 A.2d. 784 (1968), *cert. denied*, 393 U.S. 968 (1968); *State* v. *Mahoney*, 124 Vt. 488, 491, 207 A.2d 143 (1965). The defendant takes nothing on this complaint of error.

The defendant maintains that he was denied the right to counsel by being arraigned without the benefit of an attorney. During the arraignment of the defendant, he was asked by the court if he wished counsel and if he had the financial ability to employ one. He indicated that he desired counsel and that he did not have the financial resources to obtain counsel. The court then inquired as to the defendant's financial status and determined that counsel should be assigned. The court then read the charges to the defendant and informed him that he had twenty-four hours in which to enter a plea. Upon an inquiry by the court as to whether he wished to enter a plea at that time on the information and warrant, the defendant stated that he did. He thereupon entered a plea of not guilty to each charge against him. Immediately following the arraignment, counsel was assigned by the court to the defendant.

Representation of counsel is constitutionally required at each "critical stage" in the proceedings against a person accused of a crime. *Coleman* v. *Alabama*, 399 U.S. 1, 7 (1970). In *Hamilton* v. *Alabama*, 368 U.S. 52 (1961), arraignment, under Alabama law, was held to be a "critical stage" of the proceedings because only at arraignment could

the defendant plead the defense of insanity, enter a plea in abatement or make a motion to quash based on the improper drawing of a grand jury, and the failure to provide counsel there constituted reversible error. The defendant's plea of not guilty here preserved all rights and defenses which could be raised further in the proceedings, and as such, this arraignment did not constitute a "critical stage" in the proceedings. *Hamilton* v. *Alabama, supra,* 368 U.S. at 54, n. 4. Under these particular facts, absence of counsel at this time did not constitute error. But see *Boyd* v. *Dutton,* 405 U.S. 1, 30 L.Ed.2d 755, 92 S.Ct. 759 (1972).

The defendant also complains of the absence of an officer's return on his copy of the information; however, the record shows that an officer's return was entered on the original information. There is no showing that the failure to include such return on the defendant's copy in any way hampered his ability to know with what he was charged and to adequately prepare a defense. See *State* v. *Chapman,* 126 Vt. 167, 169, 224 A.2d 925 (1966). No error is here shown.

The defendant next contends that the denial of his motion for a change of venue deprived him of a fair trial. The basis of this contention is that the trial of Robert Dragon occurred only a short time before in the same court, see *State* v. *Dragon, supra,* and, during the trial, references were made to the defendant as a participant in the criminal activities for which Dragon was tried. Such references were made in open court which was open to the general public, and accounts of the trial containing these references were published in the Rutland Herald. The trial court held a hearing on the motion for a change of venue, and made findings of fact following the hearing.

Based upon the findings, the court was unable to find that any actual prejudice existed against the defendant in Windsor County such that a fair and impartial trial could not be had; hence, the motion for change of venue was denied.

The decision of the trial court on a motion for change of venue is a discretionary one and will not be disturbed unless an abuse of discretion is shown. *State* v. *Truman,* 124 Vt. 285, 289, 204 A.2d 93 (1964). However, the

guaranty of a fair and unbiased trial may far outweigh any immediate practical advantage of keeping it within a county or district where the nature and measure of public outcry may affect the prospect for a fair trial. *State* v. *Barrett,* 128 Vt. 458, 459–60, 266 A.2d 441 (1970). Nevertheless, in light of the disposition of this appeal, we are not persuaded that error has been shown in the ruling already made on the motion for change of venue.

The next two errors that the defendant alleges are that he was denied the right to speak in his own behalf at trial and he was denied his right to certain defense witnesses and portions of the transcript of the previous *Dragon* trial. There is no showing from the record that the defendant was in any way prevented from taking the stand in his own behalf, nor is there any showing of denials of any specific requests for particular defense witnesses. As to the transcript of the *Dragon* trial, it appears from the record that an attempt was made to provide the defendant with such transcript, but there is no showing that it was completed at the time of his trial. Since such transcript is now complete, it should be available to the defendant in any future proceedings in this cause.

The entrapment issue raised in the defendant's *pro se* brief has already been fully discussed in this opinion. There is no necessity to review it again here.

The exclusions of the evidence and the withdrawal of the issue of entrapment from the consideration of the jury which we have hereinbefore held to be error, taken as a whole, constitute prejudicial error; therefore, the entry in this cause is:

*Judgment reversed and cause remanded.*