# State of Vermont v. Frederick G. Ahearn

[403 A.2d 696]

No. 99-77

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed May 22, 1979

*Mark J. Keller*, Chittenden County State's Attorney, and *Norman R. Blais*, Chief Deputy State's Attorney, Burlington, for Plaintiff.

*James L. Morse*, Defender General, and *Charles S. Martin* and *William A. Nelson*, Appellate Defenders, Montpelier, for Defendant.

Daley, J. In a trial by jury the defendant was found guilty upon two informations, charging assault and robbery while armed with a dangerous weapon, a violation of 13 V.S.A. § 608(b), and upon an information charging him with a violation of 13 V.S.A. § 608(c), injuring a person while committing the acts denounced by '§ 608(b). The incidents giving rise to the charges stemmed from three separate robberies, *i.e.* "Pete's Ice Cream," "The Spring," and the "Red Lion Bar." While robbing the proprietor of the Red Lion, the defendant shot a patron who was attempting to telephone the police. The defendant appeals from the judgments and sentence imposed.

The defendant conducted his own defense. However, standby counsel, appointed by the trial court, was available to assist if he so requested. The defendant did not, at any time, deny that he committed the crimes. Indeed, in his opening statement and in his own testimony, he admitted the commission of the crimes. Rather, he relied on a unique defense of temporary insanity. The defense arises out of long imprisonment, including seven years of solitary confinement. The defendant contended that extended incarceration made him subject to sudden, uncontrollable urges that resulted in violence and theft. The jury rejected his defense, finding him guilty upon each charge.

The focal issue in this appeal is whether the defendant was afforded a fair trial. The claims of error may be generally classified into the following broad categories: a denial of his right to counsel; restriction of his ability to prepare a defense; errors in the reception and exclusion of evidence; the trial court's failure to instruct the jury on his appearance in handcuffs; and his claim that the judge should have disqualified himself during sentencing and trial. The record reveals proceedings wrought with turmoil and a tension that culminated in a physical attack upon the judge. It is also apparent from the record that much of the defendant's conduct was intended to harass the court and generally disrupt the judicial process. From our review of the record, we cannot say that the defendant was denied a fair trial. The judgment is affirmed.

I.

At the time of his arraignment on July 30, 1976, the defendant appeared without counsel. He stated that he was not indigent and had a lawyer in Boston, Massachusetts. He declined the court's offer to appoint the public defender to represent him at that time. The defendant had copies of the informations. The court informed him of the possible maximum punishments and entered pleas of not guilty in his behalf. He was then remanded to the correctional center since he could not furnish the bail set by the court.

He now contends that he was denied representation in violation of the constitution and V.R.Cr.P. 5(e), "Assignment of and Consultation with Counsel." The defendant has not shown prejudice in the trial court's actions in entering pro forma pleas of not guilty at a time when he was without counsel and before the assignment of counsel as required by V.R.Cr.P. 5(e). Moreover, these pleas preserved all rights and defenses which could be raised further in the proceedings. See *State* v. *Girouard*, 130 Vt. 575, 584, 298 A.2d 560, 565 (1972). There is no error.

II.

A review of the proceedings giving rise to the defendant's claims of error reveals the following. Three days after his arraignment the public defender was assigned to the case. He

undertook pretrial discovery procedures set out in our rules
of criminal procedure, including, but not limited to, a request
for the attendance of out-of-state witnesses which was
granted. 13 V.S.A. §§ 6641–6649. On September 17, at a time
when a trial date had apparently been set for September 21,
the defender filed a notice of insanity defense. The trial date
was continued to allow a mental examination under the pro-
visions of 13 V.S.A. § 4814. This examination was conducted
at the Vermont State Hospital and a report was made to the
court, 13 V.S.A. §§ 4815, 4816. At a competency hearing on
December 10, 1976, held in accordance with 13 V.S.A. § 4817,
the defendant first indicated his desire to represent himself.
The court, having some unresolved doubts about competency,
took no immediate action upon the request. But, the defendant
was adamant about his preference. "Your Honor . . . if you
want [the public defender] representing me during this hear-
ing as to whether or not I'm competent to stand trial, I would
like to have it on the record that when I leave here, today,
that I'm proceeding pro se."

Both the public defender and the defendant participated in
the questioning of the court-appointed psychiatrist. He testi-
fied that the defendant was a sociopath but also that he was a
man of more than average intelligence, that he could have at-
tended college if he had so desired, and that he described the
events leading up to his arrest in a clear and competent man-
ner. Despite the defendant's personality disorders, the psy-
chiatrist opined that he was competent to stand trial. The
court so ruled.

Before allowing him to represent himself, it warned the de-
fendant about the dangers of proceeding pro se. And it mani-
fested its concern by directing the public defender to appear
at future proceedings as back-up counsel. Furthermore, al-
though the trial schedule was disrupted, it granted a three-
week continuance to allow the defendant to depose the State's
witnesses and to acquaint himself with the evidence.

A week later, on December 17, the defendant filed, ap-
parently in response to the court's demand for a written
waiver, a "Motion to Proceed Pro Se." By this motion he
asked to represent himself and waived his right to a court-
appointed attorney. He stated that he could come to no rea-

sonable agreement with the public defender as to the handling of pretrial discovery; that the defender had not prepared a reasonable defense; and that because of their disagreement the defender was prejudiced against him.

At the outset of the omnibus hearing on January 24, 1977, the defendant, acting pro se, presented a written motion in which he requested the court to appoint private counsel in lieu of the public defender. It stated that he had dismissed the public defender because of a "disagreement over pre-trial discovery tactics." It also asserted that the defenders were incapable of providing adequate counsel because of their heavy workload. Orally, the defendant indicated his desire for counsel of his "own choosing."

■ The court told him, correctly, that he had no right to choose assigned counsel. Although it would have been better practice to make a more searching inquiry, the court did not probe the matter further. Relying on the motions and the defendant's statements, it denied his request. The court informed him that if he wanted counsel it would appoint the public defender and no one else. The defendant unequivocally replied that he would defend himself. The court acceded to his choice and directed the public defender to continue as standby counsel.

Based on the foregoing facts, the defendant raises the heart of his appeal, namely, that he was denied his right to counsel. He argues that he did not choose to proceed pro se but was in effect compelled to do so and that the waiver, if any, was not knowingly and intelligently made. He also claims that the court erred by allowing him to proceed unrepresented without a written waiver.

■ A defendant has the constitutional right to represent himself. *Faretta* v. *California,* 422 U.S. 806 (1975); *State* v. *Dragon,* 135 Vt. 168, 169, 376 A.2d 12, 13 (1977); *State* v. *Hartman,* 134 Vt. 64, 65, 349 A.2d 223, 225 (1975). He may defend himself without counsel provided he voluntarily and intelligently makes that choice. *Dragon, supra; Hartman, supra.* "A knowing and intelligent waiver of counsel depends on the particular facts and circumstances surrounding the case, including the background, experience, and conduct of

the accused." *Hartman, supra,* 134 Vt. at 66, 349 A.2d at 225; *Dragon, supra.*

Although the defendant does not challenge the court's finding that he was competent to stand trial, he now claims that he lacked the capacity to knowingly and intelligently waive counsel. He stresses the observations of the State's psychiatrist that he is a "classic sociopath" and suffers from a "severe personality disorder." He asserts in essence then a distinction between competence to stand trial and competence to waive counsel.

■ We do not agree that the defendant lacked the mental capacity to waive counsel. The record simply does not support such a contention. On the contrary, it shows that the defendant was articulate, intelligent, and understanding, and that he was voluntarily exercising his informed free will. He was not unfamiliar with criminal procedure. He was thirty-three years of age and had spent thirteen years in various prisons, mostly upon convictions of armed robbery and theft. He had previously appeared in court on numerous occasions with representation by counsel. Here, after extensive warnings by the court, he clearly and unequivocally declared that he wanted to represent himself and did not want counsel. Moreover, his handwritten "Motion to Proceed Pro Se" warned the court that if the motion were not granted his constitutional rights would be violated, a further indication that he understood the choices available to him.

Sufficient basis exists to hold that the defendant was fully aware that he would be on his own in a complex arena where professional training is greatly to be desired. See *United States* v. *Odom,* 423 F.2d 875, 876 (9th Cir. 1970). And, because we hold that he was competent to exercise his right to proceed pro se, we do not reach the contention that there are two separate and distinct levels of mental capacity—one to stand trial, another to waive counsel. Cf. *People* v. *Reason,* 37 N.Y.2d 351, 334 N.E.2d 572, 372 N.Y.S.2d 614 (1975) (holding that the standards are the same).

The defendant next argues that even if the waiver was competently made it was not knowingly and intelligently made because he was not told the range of allowable punishment

and because he was not informed of his right to substitute counsel.

■■ A waiver is invalid and is not made knowingly and intelligently if the defendant is ignorant of the available options necessary to protect his rights and is unaware of the nature of the charges and the range of allowable punishment at the time of his decision to represent himself. *State* v. *Hartman, supra,* 134 Vt. at 66, 349 A.2d at 225. The defendant must be made aware of "the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' *Adams* v. *United States ex rel. McCann,* 317 U.S., at 279." *Faretta* v. *California, supra,* 422 U.S. at 835.

■ We find no merit in the defendant's contention that he was never told that he faced the possibility of fifty years' imprisonment. Although the court did not perform the arithmetic for him at his arraignments, it did inform him of the maximum period of incarceration if found guilty of each offense. There is no error. The defendant also argues that the court erred in failing to advise him of the possibility of appointing substitute counsel. He asserts that the choice between proceeding with the public defender or going pro se was therefore a "choice between some, but not all, of the alternatives." *In re Fuller,* 135 Vt. 575, 581, 381 A.2d 1056, 1060 (1977). However, the defendant's "Motion for Substitute Counsel" indicates an awareness of his rights. We find no error. The more important question is whether the court abused its discretion in denying the defendant's motion.

The impact of the denial of his motion for substitute counsel, he argues, was to deny him his right to counsel. Although he raises no claim of ineffective counsel, he begins with the allegation that his relationship with the public defender was "poisoned." Under the circumstances, he contends that in requiring him to choose between self-representation and the public defender the court in effect compelled him to proceed without the assistance of counsel.

■■ An indigent defendant has no right to counsel of his own choosing. *State* v. *Bruley,* 131 Vt. 366, 367, 306 A.2d 672, 673 (1973). The court's duty is to provide the respondent

with competent counsel of sufficient ability and experience to fairly represent the respondent, to present his defense, and to protect his rights. *Id.; State* v. *Rushford,* 127 Vt. 105, 109, 241 A.2d 306, 308 (1968). However, the rules of this Court specify that counsel other than the public defender shall be assigned, where, among other reasons, "the court, for good cause, determines the need for a replacement attorney in lieu of the public defender." Rules Governing the Assignment of Counsel, 12 V.S.A. App. VIII, A.O. 4, § 3. Whether "good cause" exists is a determination that rests within the discretion of the trial court. While a trial court has the power in its discretion to appoint substitute counsel, its refusal to do so is not error unless an abuse of discretion is shown. *Irvin v. State,* 584 P.2d 1068, 1071 (Wyo. 1978).

In deciding, the court must consider such circumstances as whether present counsel is reasonably likely to afford a defendant effective assistance, whether the mutual confidence between the lawyer and client has been destroyed, whether the defendant has unduly delayed in seeking a new assignment, and whether the defendant is merely engaging in delaying tactics. *Glasser* v. *United States,* 315 U.S. 60, 75–76 (1942); *United States* v. *Burkeen,* 355 F.2d 241, 243 (6th Cir. 1966); *People* v. *Medina,* 44 N.Y.2d 199, 208, 375 N.E.2d 768, 773, 404 N.Y.S.2d 588, 593 (1978); *In re Fuller, supra,* 135 Vt. at 581, 381 A.2d at 1060. See also A.B.A. Project on Minimum Standards for Criminal Justice, Standards Relating to Providing Defense Services, § 5.3(b) (1967).

A mere expression of dissatisfaction with assigned counsel does not necessarily constitute good cause nor obligate the court to substitute new counsel. In order to establish good cause the defendant must show: (1) a conflict of interest; (2) a complete breakdown in communication with his counsel after exhaustion of good faith efforts to work with counsel; (3) incompetence; or (4) other good reason to conclude that appointed counsel is unable to furnish effective assistance. *Watson* v. *Black,* 239 S.E.2d 664, 668 (W. Va. 1977); *Irvin v. State, supra,* 584 P.2d at 1070.

Our examination of the record does not disclose sufficient facts to compel a conclusion that the court abused its

discretion in denying the defendant's motion. There is no claim of any conflicting interests nor of incompetence of counsel. The defendant's assertions of insufficient preparation and a burdensome workload do not serve as evidence of the facts as he claims them to be. *Irvin* v. *State, supra,* 584 P.2d at 1072. In addition, the trial court stated its opinion that the public defender had provided adequate and competent counsel in previous cases. The record does indicate the defendant's hostility toward the defender, but, of itself, a lack of rapport does not constitute grounds for substitution of counsel, see *State* v. *Bruley, supra,* 131 Vt. at 367, 306 A.2d at 673, and there is no evidence of good faith efforts to work with counsel. We are satisfied that the defendant has not demonstrated an abuse of discretion by the trial court. *Watson* v. *Black, supra; Irvin* v. *State, supra.*

The defendant's final attack on the waiver is that it failed to comply with Rule 6 of the Rules Governing the Assignment of Counsel. 13 V.S.A. § 5237 provides that a person may waive in writing, or by other record, any of the rights provided by chapter 163 of that title. But Rule 6 is more specific as to the requirements for waiving counsel:

> If the right to counsel is waived, such waiver shall be in writing and signed by the person concerned. The waiver shall be approved by the court having jurisdiction of the subject matter under investigation, only after the court has made an inquiry of that person to see if he is knowingly and intelligently waiving such right to counsel in open court. The waiver shall include a statement by the court that the person concerned has been informed of his right to counsel prior to the execution of the waiver. The waiver shall be filed and included as an essential part of the record of the case.

Rules Governing the Assignment of Counsel, 12 V.S.A. App. VIII, A.O. 4.

The defendant claims that the Rule is not satisfied by the defendant's "Motion to Proceed Pro Se." He argues that the document is entitled a motion and not a waiver, that it lacks the requisite endorsement by the court, and that while it "waives his right to have a court appointed attorney," it does

not constitute a general waiver of the right to counsel. Although we agree that the motion is imperfect, we do not find reversible error arising from the minor shortcomings in the document that is before us. The record demonstrates that after repeated attempts at dissuasion by the court the defendant knowingly, intelligently and voluntarily waived his right to counsel. See *State* v. *Castoe,* 114 Ariz. 47, 51, 559 P.2d 167, 171 (1976). Coupled with the record, the motion, although inartfully drafted, adequately establishes that counsel was waived in a manner that meets statutory and constitutional requirements.

### III.

After the denial of the "Motion for Substitute Counsel," the defendant, acting pro se, orally requested that certain out-of-state residents be subpoenaed on his behalf. Three were inmates at Walpole Prison who had known him for years, one was a former lawyer who was also a "friend" and who the defendant said "knows my mental state inside out." The fifth was a psychologist who had examined him in 1959. The defendant stated that they would testify as to his behavior in the past. The court ruled that they were not material and denied the motion to compel their appearance. Although the defendant admits on appeal that the showing of materiality was made in sketchy and generalized terms, he contends that it was error for the trial court to fail to subpoena them.

A trial court is not required to issue compulsory process for anyone whom an accused may designate as a witness. *State* v. *Dragon,* 130 Vt. 334, 340, 292 A.2d 826, 830 (1972). Compulsory process is only required where the witnesses to be called will offer competent and material testimony. *State* v. *Kelly,* 131 Vt. 582, 588, 312 A.2d 906, 909 (1973); *State* v. *Dragon, supra,* 130 Vt. at 340, 292 A.2d at 830. The burden is on the defendant to show that competency and materiality. *Id.* The trial court has wide discretion to determine which witnesses requested by an indigent defendant should be subpoenaed at government expense, and its decision will not be disturbed except in cases of clear abuse. *United States* v. *Beasley,* 479 F.2d 1124, 1128 (5th Cir.), *cert. denied,* 414 U.S. 924 (1973).

A reviewing court should not reverse unless the circumstances of the case indicate that the "defendant's right to a complete, fair and adequate trial is jeopardized." *United States* v. *Rigdon,* 459 F.2d 379, 380 (6th Cir. 1972), *cert. denied,* 409 U.S. 1116 (1973); *Terlikowski* v. *United States,* 379 F.2d 501, 508 (8th Cir.), *cert. denied,* 389 U.S. 1008 (1967). The defendant's generalizations did not adequately establish materiality. We would further note that a subpoena was apparently not necessary to compel the appearance of the lawyer. He testified voluntarily on the defendant's behalf at sentencing. There is no error.

The defendant next claims that, despite the presence of the public defender, he was denied adequate access to legal materials, in violation of *Bounds* v. *Smith,* 430 U.S. 817 (1977). He argues that because he chose to proceed pro se he had a right to prepare his defense in a law library. The defendant misreads *Bounds,* however. In that case, the Supreme Court held that prison authorities must assist inmates in the preparation and filing of legal papers by providing them "with adequate law libraries *or* adequate assistance from persons trained in the law." *Id.* at 828 (emphasis added). The provision of a law library might be unreasonably expensive, and, to an untrained inmate, the services of a lawyer are perhaps more effective. *Williams* v. *Leeke,* 584 F.2d 1336, 1340 (4th Cir. 1978). The defendant had the functional equivalent of a law library in the form of the public defender, who was available to perform any necessary research. *People* v. *Rice,* 579 P.2d 647, 650 (Colo. App. 1978). There is no error in the court's restriction of the defendant to that alternative.

The defendant next argues that the court abused its discretion in limiting the number and length of the long-distance phone calls it allowed him. He contends that because a court-appointed attorney is privileged to make as many calls as he deems necessary for his client's defense a pro se defendant is entitled to the same. We do not agree. A trial court may, in the exercise of its discretion, limit a defendant's telephone calls at public expense. In addition, the defendant had counsel during this period who could have made additional calls for him and was so informed. No showing has been made

that the defender was ever so requested. We find no abuse of discretion.

## IV.

The appellant next avers that the court abused its discretion in denying the continuances that he sought. He contends, first, that a continuance should have been granted to allow him time to prepare his case. He required the time, he argues, to contact his witnesses and to prepare them for trial, to obtain records of brain damage, and to depose the State's witnesses. Second, he claims that a recess should have been granted between the testimony of each witness, to permit him to talk with them before placing them on the stand. Finally, he claims that more time should have been granted to prepare his summation.

A motion for continuance is addressed to the sound discretion of the trial court. *State* v. *Rickert,* 124 Vt. 380, 382, 205 A.2d 547, 549 (1964). A party alleging abuse of judicial discretion has the burden of proof. *State* v. *Lagoy,* 136 Vt. 39, 41, 383 A.2d 604, 606 (1978); *Kissell* v. *Kissell,* 131 Vt. 77, 81, 300 A.2d 551, 553 (1973). To support a claim of error, the party must show that the court failed to exercise its discretion, or that its discretion was exercised for reasons clearly untenable or to an extent clearly unreasonable. *Lagoy, supra; Brooks* v. *Brooks,* 131 Vt. 86, 92, 300 A.2d 531, 535 (1973). This Court will not interfere if there is a reasonable basis for the court's discretionary action. *Id.*

The defendant had the services of the public defender for five months before trial. During that period a continuance was granted for a psychiatric examination. Another three-week continuance for the purposes of general trial preparation was granted on December 10, 1976, when the defendant first announced his intention to represent himself. By the time of the omnibus hearing on January 24, when the defendant made a request for more time, he had already had six weeks to prepare his case. And another two weeks passed before the start of trial on February 8. Under the circumstances, the defendant had ample time to prepare a defense. The trial court did not abuse its discretion in denying a continuance for general trial preparation.

The production of brain damage records poses a more specific question. On the first day of trial, the defendant informed the court that neurological records, which purported to show brain damage, were being forwarded from Massachusetts, and would arrive the following day. The court did not delay the start of the trial. In cross-examination of the State's expert on the issue of sanity, the witness testified that he might change his opinion as to the defendant's sanity, if confronted with evidence of brain damage. The following day the trial proceeded to a conclusion without mention or production of the brain records.

 While the introduction of brain wave tests, if they existed, might have altered the expert's opinion as to the defendant's sanity, we cannot say that he was unfairly deprived of the opportunity to obtain them. He had nearly two months to procure them, and counsel was available to assist him in procuring their production. No showing is made that the public defender was even asked to acquire the records, nor, in fact, was their existence ever concretely established. There is no error.

 Although the defendant claims that the trial court abused its discretion in denying him five minutes to talk with each witness and in limiting his opportunity to prepare a summation, he makes no showing of prejudice, and we find none in our review of the record.

## V.

 The defendant next claims that the court erred in the reception and exclusion of evidence. First, he contends the State's expert on the question of sanity was permitted to give opinions which were based in part upon hearsay. Since no objection was made at trial, we need not consider it here. Second, he contends that lay witnesses were improperly allowed in the State's case to give their opinions as to his sanity. Again, no objection having been raised below, the claim will not be considered. Finally, he argues that the court erred by not allowing him to elicit opinions as to his sanity from his own lay witness.

██ ██ The witnesses were prison guards who, upon the defendant's questioning, described various acts of violence they had seen. They characterized his behavior while in the correctional center as "irrational," "emotional," "violent," "sick." Objections were made to some of the defendant's questions concerning his mental state. The questions were immaterial, incompetent, leading or called for hearsay answers, and the objections were properly sustained. Furthermore, where the testimony was excluded on objection, the defendant failed to make any offer of proof as to the testimony sought to be elicited. The absence of an offer of proof forecloses the establishment of error below. *State* v. *Beckenbach,* 136 Vt. 557, 561, 397 A.2d 79, 81 (1978).

The defendant also specifically contends that it was plain error for the court to strike, on its own motion, the testimony of a psychologist for the defense that one of the robberies was an example of his mental illness. This contention is without merit. The transcript reveals the answer was not stricken. The matter stricken was a subsequent question which was clearly inadmissible.

## VI.

The next claim of error derives from the defendant's own outbursts. After the testimony of his first witness, the defendant asked for a five-minute recess before he called his next witness. As indicated above, his request was denied. A bench conference ensued. When the defendant became emotionally excited, the jury was excused. He became increasingly indignant, abusive, and obscene, insisting that he would not continue until he had had a conference with the next witness. Faced with the defendant's intransigence, the judge called the public defender to the bench, saying that the defendant was to be excluded from the courtroom. At that point, the defendant picked up a loudspeaker and hurled it at the judge. It struck him in the face. Court officers tackled the defendant and carried him out.

Following a recess, the defendant was given the alternative of appearing in restraints or of being excluded from the courtroom. He chose the former and again rejected the public defender. Asked how the handcuffs would be explained to the jury, the court replied that they would not be. When the

trial resumed, the defendant questioned witnesses and made oral argument, while seated at counsel table with his hand-cuffs shackled to a restraining belt.

On appeal, the defendant does not challenge the court's action in imposing the restraints but contends the court prejudicially erred in failing to instruct the jury that such restraint is not to be considered in weighing evidence or determining the issue of guilt. See A.B.A. Standards Relating to the Administration of Justice, The Function of the Trial Judge, § 5.3(b)(ii) (1972).

■ No instruction was requested and the defendant took no objections to the court's charge as given. Generally, issues not raised below will not be considered for the first time on appeal. The defendant, however, claims the court should have given the instructions sua sponte and its failure to do so was "glaring error," striking at the heart of his constitutional right to fair trial. *State* v. *Morrill,* 127 Vt. 506, 511, 253 A.2d 142, 145 (1969). Under most circumstances we would be prone to agree, but upon this record we cannot. From start to finish the defense to the crimes charged was temporary insanity that caused uncontrollable, sudden violence. The history of previous violent acts was laid before the jury in the defendant's opening statement, the testimony of the State's psychiatric expert, and in the evidence supplied by defense witnesses. In closing argument the defendant reiterated the length of his incarceration and the fact that it included many years of solitary confinement because of incidents of violence. In light of the evidence presented the jury could not infer from the defendant's presence in handcuffs anything more than they already knew. *Corley* v. *Cardwell,* 544 F.2d 349, 352 (9th Cir. 1976), *cert. denied,* 429 U.S. 1048 (1977). In fact, the defendant's appearance before them in restraints could only serve to bolster his defense theory. No prejudice having been made to appear, the error, if any, is harmless.

## VII.

The jury returned separate verdicts of guilty as to each of the crimes charged. Judgment was entered upon each verdict of guilty. Nearly six weeks later, the trial court, after having

received a presentence report, conducted a sentencing hearing. The following sentences were imposed: Docket No. 1881-76 CnCr, violation of § 608(c), assault and robbery while armed causing injury to another person, not less than ten nor more than twenty years; Docket Nos. 1887-76 CnCr and 1888-76 CnCr, charging assault and armed robbery, not less than six nor more than fifteen years, to be concurrent with each other and consecutive to the sentence imposed in 1881-76 CnCr.

The defendant now avers that the judge should have disqualified himself at trial and at sentencing, although disqualification was only hinted at at trial and was never raised at sentencing. He relies on Canon 3(C)(1) of the Code of Judicial Conduct: "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where: (a) he has a personal bias or prejudice concerning a party . . . ." Code of Judicial Conduct, 12 V.S.A. App. VIII, A.O. 10. Where a judge has been struck in the face by a defendant, he argues, the judge's subsequent impartiality might reasonably be questioned.

 "In order to maintain a colorable claim of judicial disqualification against the presiding judge, defendant must affirmatively show bias or prejudice directed against him." *State* v. *Beshaw*, 134 Vt. 347, 351, 359 A.2d 654, 656 (1976). No such showing has been made. The mere fact that the defendant attacked the judge does not alone support a claim of disqualification. Indeed, a defendant's misconduct will not lightly be allowed to disrupt a trial. "Schemes to drive a judge out of the case . . . should not be allowed to succeed." A.B.A. Standards Relating to the Judge's Role in Dealing With Trial Disruptions, § F.5, at 21 (1971).

The defendant's contention that a different judge should have been appointed for sentencing is more cogent, but he does not satisfy his burden on review. "It is the existence of bias or prejudice in [the trial judge's] mind which must be clearly shown." *State* v. *Beshaw, supra,* 134 Vt. at 351, 359 A.2d at 656; *Leonard* v. *Willcox*, 101 Vt. 195, 215, 142 A. 762, 771 (1928). In support of his claim, he argues solely that the sentence is harsh.

In view of Canon 3(C)(1), wherein a judge should disqualify himself if his impartiality might reasonably be questioned, we feel that it would have been better for the judge to have stepped aside. See *State* v. *Beshaw, supra,* 134 Vt. at 351, 359 A.2d at 656. However, we cannot agree that the sentence itself clearly establishes the existence of bias or prejudice against the defendant. While the sentence is certainly severe, it is not, in view of the crimes for which the defendant was convicted and in light of his twelve previous felony convictions, inappropriate. No bias or prejudice having been shown, reversible error does not appear.

*Judgment affirmed.*