## State of Vermont v. John Emrick

[282 A.2d 821]

No. 16-70

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed October 5, 1971

476

*Kimberly B. Cheney,* State's Attorney, for the State.

*Edwin W. Free, Jr.,* Barre, for Defendant.

**Smith, J.** The defendant, John Emrick, was charged with breaking and entering the Seivwright Pharmacy in Montpelier, in the daytime, on November 24, 1968. Jury trial was held in the District Court, Unit 5, Washington Circuit, in Montpelier, on February 11, 12 and 13, 1970, and the jury returned a verdict of guilty. Judgment on the verdict was entered by the District Judge on February 13, 1970, and the defendant has taken his appeal here.

The evidence, viewed in the light most favorable to the State, discloses the following factual circumstances. On the morning of November 24, 1968, Mr. Lewis, the janitor for the pharmacy, was confronted at about 8 A.M. by a person in the pharmacy, with his hands covering his face, and ordered to lie face down on the floor. His feet and hands were tied, his mouth taped, and he was unable to clearly view his assailant, although he described him as having blonde or brown hair. At

about nine o'clock, a pharmacist arrived, a Mr. Russell, who released the janitor, called the Montpelier Police Department, and found a number of drugs, both regulated and unregulated, missing from the shelves of the pharmacy, with some scattered about the floor of the premises. Corporal George Patch, of the Vermont State Police, arrived at the scene and took a number of fingerprints, including some from a box of tape from which material had been used to tie up the janitor.

On the evening of December 22, 1968, a Mr. Lupien, a neighbor of the defendant in the same trailer park, discovered the defendant unconscious upon a bed in the trailer occupied by the defendant and a Mrs. Hepsley and her child. He called the State Police for assistance and Trooper Morris entered the trailer with Mr. Lupien, found the defendant still unconscious upon his bed, surrounded by a number of bottles of pills bearing the label of the Seivwright Pharmacy. The defendant was removed to a hospital. Defendant was arrested on December 23, 1968, charged with breaking and entering.

The first claim of error made by the defendant is that the lower court committed error in denying the motion of the defendant to produce two witnesses from without the State under 13 V.S.A. § 6646, quoted below:

> "If a person in any state, which by its laws has made provision for commanding persons within its borders to attend and testify in an action in this state, is a material witness in such action pending in a court of record in this state, a superior judge or a judge of a district court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required. Such certificate may include a recommendation that the witness be taken into immediate custody and delivered to an officer of this state to assure his attendance in this state. Such certificate shall be presented to a judge of a court of record of the state in which the witness is found."

The defendant, in his motion to have the state produce two witnesses, one young lady from Maine and the other from the State of California, asserted that they were material to his defense. He refused to divulge the nature of the testimony which he believed would be given by the two witnesses, but did state

they were "absolutely necessary to his defense." Without the citation of authority, the defendant argues that he was not required to state the type of evidence that such witnesses would present, if brought to Vermont. He claims that the refusal of the lower court to order the attendance of the witnesses denied the defendant a full and fair hearing which the defendant was entitled to under the enactment of the Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Cases.

The defendant stated at the preliminary hearing on his motion that he did not know the address of either of the witnesses he desired. He refused to say upon what information he believed that the two witnesses were material to his case, nor what the materiality of their testimony would be.

For the defendant to obtain the relief provided for in 13 V.S.A. § 6646, he had the burden of establishing that each of the witnesses requested to be brought from another state was a "material witness." This required, at the preliminary hearing upon his application, a showing that such testimony would be material to his defense. The design of the statute requires the presentation of sufficient facts to enable the court of the state to which the requisition is directed to determine whether the witness should be compelled to travel to the trial in a foreign jurisdiction. This is a drastic procedure and the demands of due process must be satisfied as far as the witness is concerned. *New York* v. *O'Neil,* 359 U.S. 1, 8, 79 S.Ct. 564, 3 L.Ed.2d 585 (1959); *State* v. *Smith,* 87 N.J. Super. 98, 208 A.2d 171, 174 (1965); Annot., 44 A.L.R.2d 732 (1955), and cases cited therewith. The burden was upon the defendant to establish the materiality of the testimony which would be given by the witnesses he desired to have produced under the provision of the statute, and without such proof he was not entitled to have the benefit of compulsory process to secure witnesses from without the state under the statute.

The next briefed exception by the defendant is that it was an abuse of discretion on the part of the trial court to admit evidence concerning the discovery of drugs in the defendant's trailer as the evidence was too remote in time to be logically probative.

This objection relates to the evidence given by witnesses for the State as to the drugs found upon the bed in which defendant was lying unconscious, in his trailer, and to other drugs found about the trailer. Such drugs were positively identified as having come from the Seivwright Pharmacy by the pharmacists employed there, and as being part of the material taken on the morning that the drug store was burglarized.

As we have already seen, these drugs were discovered in the trailer of the defendant nearly a month after the alleged breaking and entering took place at the pharmacy. The contention of the defendant is that the admission of the evidence concerning the finding of the drugs in the trailer was too remote in time to show the ultimate fact sought to be proved which was that the defendant was the person who committed the burglary.

The defendant concedes that the question of remoteness rests largely in the discretion of the trial court. *State* v. *Persons,* 114 Vt. 435, 438, 46 A.2d 854 (1946). But the defendant contends that in this instance the court below abused its discretion. The case of the State against the defendant was admittedly based upon circumstantial evidence, and the court so charged the jury. In addition to the discovery of the purloined drugs strewn about the defendant, and within the premises which he occupied, there was further evidence that the fingerprints of the defendant were found in the pharmacy which had been burglarized, and even upon the tape box from which the material had been taken to bind the janitor. Under the evidence in this case, we cannot find that the lower court exercised its discretion on grounds or for reasons clearly untenable to an extent clearly unreasonable, which is the test in this jurisdiction. *Gray* v. *Janicki,* 118 Vt. 49, 50, 99 A.2d 707 (1953). Further, the defendant, upon whom rested the burden of showing the abuse of discretion, has not shown such claimed abuse. No error is found.

The defendant has next briefed his exception to the failure of the lower court to grant defendant's second request to charge:

> "In order for you to justify an inference that defendant had possession of the drugs and medicines found in the trailer, the State must show he had the exclusive

care, management, and physical control of them, or that he was secretly hiding or protecting them; for merely finding them at the time he was found in the trailer, to which trailer others had equal access with him, is insufficient to support a finding that he possessed them."

The instruction of the court in this regard, to which exception was taken, was:

"There is no evidence that the Respondent, John Emrick, owned the trailer but there is evidence that he occupied or lived in the trailer. The question of possession, which has been discussed, of the drugs is for you to determine. There is no evidence where the drugs were or who possessed or had control of them between the time of the break and the time the Police were called to the trailer, some 24, 25, 28 days. You are to determine, if you can, from the evidence who you believed had possession or control of them."

The lower court then went on to explain that the case of the State against the defendant was based upon circumstantial evidence and direct evidence to the jury. The lower court also defined "possession" as the term is used in criminal cases.

We find no error in the instruction as given by the court, nor in the refusal to charge as the defendant requested. As the lower court stated, there was no direct evidence on the part of the State that the defendant possessed or had control of the drugs from the time they were taken from the pharmacy until the time they were discovered in the trailer occupied by the defendant, but there was other evidence from which the jury were at liberty to draw legitimate inference on the possession of the drugs from the time they were taken until the time they were discovered. The matter of possession was a question of fact for the determination of the jury, based upon all the evidence in the case, and we find no error.

The defendant has also briefed his exception to the introduction in evidence of a certain card containing the fingerprints of the defendant. The fingerprint expert, introduced by the State, testified that from a comparison of the fingerprints on the card he was able to determine that they were impressions

made by the same individual, the defendant, whose fingerprints were on articles found at the scene of the burglary.

The contention of the defendant is that by the introduction of the fingerprint card, the State was offering evidence to show prior criminal misconduct and as such, was inadmissible, citing *State* v. *Howard,* 108 Vt. 137, 183 A. 497 (1936).

 But in *Howard,* the State was attempting to offer evidence of other offenses on the part of the accused. Here, the evidence was only a card, bearing the fingerprints of the defendant. The card in question was from the records of the Federal Bureau of Investigation, in Washington, D.C., headed in large letters with the word "Applicant". This in itself would indicate that such prints were taken at some period when the defendant was applying for some position or employment. Nothing on the card indicates in any way that the prints were taken as a result of, or in connection with, any criminal proceeding. It is common knowledge, and this Court will take notice of the fact, that fingerprinting is a common method of identification used in many employments, and in the issuing of many licenses and permits, as well by the individual, to assure that his identity be made clear in case of sudden death or accident. We do not find that the introduction of this particular fingerprint card of the defendant in any way improperly opened the question of his character, or suggested prior criminal conduct to the jury. Defendant takes nothing by this exception.

The defendant has also briefed his exception to certain statements he claims were made by the State's Attorney during final argument relative to the testimony of Mrs. Hepsley, who was living with the defendant in the trailer at the time of his arrest. Mrs. Hepsley, provided with counsel, refused to answer all material questions asked her by the State's Attorney by pleading the Fifth Amendment.

██ We are again faced, as we have been in the past, with the fact there is not in the transcript before us a record of the arguments made by counsel. As this case was tried before the decision handed down in *State* v. *Oakes,* 129 Vt. 241, 276 A.2d 18 (1971), requiring that arguments in cases be transcribed, such decision did not apply. The record before us does

not clearly present the argument upon which the objection was based, and, in the absence thereof, we cannot consider the objection. We can consider nothing that is not contained in the record, and will not pass on a question not raised by the record. *Campbell* v. *Patterson,* 7 Vt. 86 (1835).

It appears that during the course of the trial, one of the jurors was observed taking some notes of the evidence, and the defendant moved for a mistrial, which was denied. However, the lower court, upon the matter being called to its attention, instructed the jury that the taking of notes was not permissible, and that if any notes had been taken they should be destroyed, not taken into the jury room, or considered in the deliberations of the jury.

As the defendant admits in his brief, we have no case law either permitting or prohibiting the taking of notes by a juror. However, the general custom has been for the court to instruct the jury that they should not take notes during the court proceedings on the ground that a complete record of the trial is taken by the court reporter, and such records are available to the jury if needed. While the defendant claims prejudice in this matter, it is admitted that there is no way that he can show that such prejudice actually resulted. The court promptly and effectively conveyed to the jurors its disapproval of this practice of note taking, and clearly instructed the jury that such notes were to be destroyed and ignored. This Court registers its disapproval of note taking by jurors during the course of a trial. However, in the instant case, no prejudice has been shown by the defendant, and we must presume that the instructions given by the court to the jury on the matter were faithfully followed by the jury. No prejudicial error is shown.

The final briefed exception by the defendant is to the denial by the lower court of defendant's request to file appropriate motions after verdict and prior to judgment, which defendant claims to be error. This exception was brought about because, notwithstanding the request of the defendant, the lower court immediately granted judgment on the verdict. It is the contention of the defendant that certain motions, such as arrest of judgment, must be filed prior to entry of judgment.

The record before us does not disclose that any objection was made by the defendant to the entry of the judgment on the verdict at the time it was rendered. The defendant could have moved for a new trial within thirty days after the verdict and judgment. 12 V.S.A. § 2351; 4 V.S.A. § 442(b). There was nothing to prevent the defendant from moving to vacate or strike the judgment and conduct such further hearings as might be required. *Horicon* v. *Langlois*, 115 Vt. 81, 84, 52 A.2d 888 (1947).

*Judgment affirmed.*