## State of Vermont v. Richard McSheffrey

[306 A.2d 702]

No. 124-71

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed June 5, 1973

330

*Robert W. Gagnon,* State's Attorney, and *Jean B. Baldwin,* Deputy State's Attorney, for the State.

*Alan W. Cook, Esq.,* of Richard E. Davis Associates, Barre, for Defendant.

**Keyser, J.** The defendant was convicted after jury trial of operating an automobile while under the influence of intoxicating liquor on U.S. Route 302 in the Town of Berlin on July 20, 1970. After sentence he appealed his conviction to this Court.

The defendant states the issues raised by his appeal are as follows:

> "I—Was the evidence presented in the trial court insufficient to meet the standard of reasonable doubt and support a conviction; or alternatively, did the trial judge err in failing to grant appellants motion to set the verdict aside as against the weight of the evidence.
>
> II—Were the statements of the prosecutor to a member of the jury about evidence which the trial judge had instructed the same juror he was not to consider prejudicial thereby requiring a reversal.
>
> III—Did the trial judge err in admitting evidence of a chemical analysis of the appellant's breath over the objection of the trial defense counsel."

Defendant's Exceptions I and III relate to the weight and admission of evidence and are considered together.

A review of the testimony of state trooper Goralski shows that at 0131 hours on the night of July 19, 1970, he followed the defendant's automobile approximately 7/10ths of a mile on the Barre-Montpelier highway. While doing so he observed the defendant drive his motor vehicle left of the center of

the road on four occasions. This caused him to stop the car to see what was wrong with the driver. When defendant got out of his car the trooper observed that defendant stumbled. Upon being asked for his driver's license, he fumbled for his wallet and had some difficulty finding his license. The trooper asked to smell defendant's breath and, when he did, he noticed defendant's eyes were glassy and he detected a strong odor of beer on his breath. The trooper then told defendant he believed him to be under the influence of intoxicating liquor. He then requested defendant to take a test to check his belief. When defendant consented to do so the trooper explained the Implied Consent Law to defendant including the three available tests. He also advised defendant what his rights were by giving the so-called "Miranda warning". The defendant agreed to take the breath test and he then accompanied the trooper to K Troop Headquarters. The test was given by Trooper Goralski operating a photo-electric intoximeter under the supervision of state police officer Corporal Fish, who had received extensive training and experience in operating the machine. The result of the test given defendant showed a level of .15 percent by weight of alcohol in the defendant's blood. The arresting trooper testified it was his opinion that defendant "was under the influence" while operating his automobile on the night of July 19, 1970.

The significance of the result of defendant's test is demonstrated by 23 V.S.A. § 1204(a)(3) which, at the time of trial provided:

> "If there was at that time 0.10 percent or more by weight of alcohol in the person's blood or breath, it shall be presumed that the person was under the influence of intoxicating liquor."

The principle under which the intoximeter operates, the accuracy of the test given defendant, the manner in which the test was given and how the blood alcohol level was measured by means of the machine were also matters of evidence.

The defendant's evidence primarily concerned the amount of beer consumed by the defendant on the evening in question and a refutation of certain testimony of Trooper Goralski. The defendant testified that tests other than a breath test

were not mentioned to him by the officer although he knew there were other tests. He also claimed that the officer asked him to go to K Barracks to take a breath test and he said "yes". This and other testimony presented by defendant was in conflict with that of Officer Goralski recited *supra* which need not be repeated here.

As trier of fact it was the sole province of the jury to determine the weight of the evidence, credibility of the witnesses and the persuasive effect of the testimony. *In re Rathburn,* 128 Vt. 429, 436, 266 A.2d 423 (1970); *State* v. *Pecor,* 127 Vt. 401, 403, 250 A.2d 736 (1969).

Answering defendant's argument that the verdict was against the weight of the evidence, we hold that the trooper's testimony, and the evidence taken as a whole, was clearly sufficient to present a justiciable issue for the jury to decide.

The record effectively rules out error by the court either in overruling defendant's motion to set aside the verdict and the further claim that the results of the breath test were inadmissible.

Defendant's Exceptions I and III are without merit.

Moreover, the denial of defendant's motion to set aside the verdict invoked a discretionary ruling by the trial court. To be error, it must be shown that the court abused or withheld its discretion. *State* v. *Morrill,* 127 Vt. 506, 508, 253 A.2d 142 (1969). And it must appear that the court exercised its discretion on grounds, or for reasons, clearly untenable, or to an extent clearly unreasonable. *Temple* v. *Atwood,* 99 Vt. 434, 435, 134 A. 591 (1926). This Court is bound to indulge every reasonable presumption in favor of the ruling below. *State* v. *Morrill, supra.*

The defendant makes no claim, or a hint of one, that the court withheld or abused its discretion. This Court held in *State* v. *Wilson,* 113 Vt. 524, 529, 37 A.2d 400 (1944), that a motion to set aside the verdict and for a new trial upon the ground that the verdict was against the weight of the evidence was addressed to the court's discretion and was not

revisable by the Supreme Court where there was no claim that such discretion was abused.

The critical issue is this appeal, however, is Exception II—whether the statements of the State's Attorney made during his rebuttal argument were so prejudicial as to require a reversal.

Shortly after the prosecutor commenced his reply argument one of the jurors interrupted him by addressing the court. As a result the following colloquy took place:

> "Juror: Your Honor, may we ask a question?
>
> The Court: It is a little unusual.
>
> Juror: It is about this machine. When they demonstrated this machine this morning, they have a vial they put on this other outlet and they said they kept it for sixty days so if the Respondent wanted to have it analyzed, he could. I haven't heard anything about that, what that showed.
>
> The Court: There hasn't been anything introduced, so it is not for your consideration."

The State's Attorney then continued his argument, saying:

> "Mr. Burns, that is one of the questions I was going to ask. That is very much in my mind. That machine makes a sample and it comes through this gadget here and it is capped and put this wrapper on it and put the Defendant's name on it. We don't have the tube. If you recall the testimony of Trooper Goraslki [sic], his testimony was Mr. McSheffrey, the Father, picked up that tube within the sixty-day period and that wasn't contested here. That is why I asked Mr. McSheffrey that question 'Your Father was here this morning and he isn't here this afternoon.' He is the one that knows about that perchlorate tube."

It is provided by 23 V.S.A. § 1203(a) that:

> "A sufficient amount of blood, breath, urine or saliva, as the case may be, shall be taken to enable the person, at his option, to have an independent analysis of the

sample, and shall be held for 60 days unless sooner col-
lected by the respondent for purposes of permitting an
independent analysis."

This sample is taken and held in what is known as a perchlor-
ate tube.

Officer Goralski testified that this tube was picked up within
the 60-day period. In his cross-examination defendant
brought out that the defendant's father was the person who
obtained the sample. No further evidence regarding this sam-
ple came into the case—that is, whether an independent test
was made of the sample or whatever became of it.

The defendant did not interpose an objection to the State's
Attorney's argument or move for a mistrial. The court nei-
ther expressed its disapproval of the prosecutor's argument
nor gave a warning instruction to the jury concerning it.

■ The remedy for any improprieties on the part of the
prosecuting attorney in summing up is to interpose by im-
mediate objection. Generally, the argument must be inter-
rupted at the moment it is made. 5 F. Wharton, *Criminal Law
and Procedure* § 2079 (12th ed. R. Anderson 1957). The
purpose of this requirement is to call the attention of the
court to the problem and provide the court with an ample
opportunity to deal with it. *State* v. *Ross,* 130 Vt. 235, 290
A.2d 38 (1972).

■ ■ We can consider nothing that is not contained in
the record and will not ordinarily pass on a question not
raised by the record which is the case here. *State* v. *Emrick,*
129 Vt. 475, 483, 282 A.2d 821 (1971). But there is an excep-
tion to this rule as stated in *State* v. *Morrill, supra,* 127 Vt. at
511 where we said:

"In order to reach the question attempted to be raised
we must first decide whether this is one of those rare and
extraordinary cases where a glaring error occurred dur-
ing the trial and was so grave and serious that it strikes
at the very heart of the respondent's constitutional rights.
It is only in this context that we will examine the case
and determine whether the record indicates it is of this

character since the question is not otherwise properly before this court."

The statute, 23 V.S.A. § 1204, mandates that a second sample of any test be taken and made available to the person examined for analysis independent of that of the State. Here, the defendant did not take the sample. Rather, it was the defendant's father who picked up the tube from the trooper. There was no evidence whatever that the sample was tested or what became of it.

■ The purpose and policy of the statute is to protect the defendant and not to manufacture evidence in favor of the state. Nor does it impose an obligation on the defendant to testify what he did concerning a sample obtained by him. And no inference may be drawn against the defendant by the court, prosecutor or jury if he does pick up his sample. He is not to be prejudiced thereby nor placed in jeopardy or at the mercy of the second sample which the statute provides shall be taken and preserved for him for a 60-day period. And this is true whether or not a defendant testifies in his own behalf or a third party obtains the sample.

■ The argument of the State's Attorney was highly improper and prejudicial and threatened the right of the accused to a fair and impartial trial. See *Fryson* v. *State,* — Md.App. —, 301 A.2d 211 (Ct.Spec.App. 1973). In answering the juror's question the court had already ruled that there had been no evidence introduced as to what the analysis of the defendant's sample showed, if made, and told the juror "it is not for your consideration." In spite of this ruling of the court the State's Attorney addressed the juror and proceeded to answer the question himself.

What he said in his argument accentuated the question the juror had in mind and gave the erroneous impression to the entire jury panel that because a test of the perchlorate tube was not given in evidence by defendant's father an inference could properly be drawn against the defendant. Although the State says the remarks were a fair comment on the evidence, we do not view it in that light. Considering that a demonstration test made during trial using a sober trooper, Corporal Fish, resulted in a test of .39 percent which Trooper

Goralski explained was due to improper adjustments of the intoximeter because of his nervousness and that Dr. Woodruff testified a person would have to drink eight beers within an hour to have a test result of .15 percent, it might well be that the juror asked the question because he had some doubt about the test of the State. The juror's question answered at it was by the State's Attorney could very well have influenced the jury to the prejudice of the defendant and been a significant factor considered by them in arriving at their verdict. This was particularly so since the court failed to take appropriate action, as it should have, to overcome a likelihood of prejudice. See 23A C.J.S. *Criminal Law* § 1116, at 234–36; *Conway* v. *State,* 7 Md.App. 400, 414, 256 A.2d 178 (Ct.Spec. App. 1969).

We hold that in the posture of this case the question attempted to be raised by the defendant was of such character that the rule stated in *State* v. *Morrill, supra,* applies.

*Judgment reversed and cause remanded.*