**State of Vermont v. Daniel J. Garvey**

[329 A.2d 662]

No. 19-73

Present: Barney, C.J., Smith, Keyser and Daley, JJ., and Shangraw, C.J. (Ret.)

Opinion Filed December 3, 1974

*Dale O. Gray,* State's Attorney, for the State.

*Robert Edward West,* Defender General, *Gregory A. McKenzie,* Deputy Defender General and *Alan S. Rome, Esq.,* for Defendant.

Keyser, J. Daniel Joseph Garvey was convicted after jury trial in the District Court of Vermont, Unit No. 4, Caledonia

Circuit, of operating an automobile while under the influence of intoxicating liquor. He now appeals to this Court, alleging that erroneous references were made at trial concerning a second urine sample taken for his benefit under 23 V.S.A. § 1203(a), which provides that a sufficient sample shall be taken to enable the individual, at his option, to have an independent analysis of the sample made.

The record reveals, in pertinent part, the following proceedings at trial. During direct examination of State Trooper Abbey, one of the officers who assisted in collecting the urine sample, evidence was introduced that the urine kit contained two glass vials in which to place samples. Upon cross-examination by defendant's attorney, Trooper Abbey was interrogated as to his purpose in conducting the tests:

Q. If you were certain he was under the influence of intoxicating liquor when you saw him at the barracks, what is the purpose of these tests?

A. To help in the State's case and also Mr. Garvey's case.

Q. You thought those tests might show that Mr. Garvey was under influence of intoxicating liquor?

A. No, sir, I didn't.

Q. What do you mean by help with Mr. Garvey?

A. In order to give Mr. Garvey a fair and honest trial.

Q. What do you take these samples for if you thought he was under the influence of intoxicating liquor?

At this point the State's Attorney objected. The objection was sustained and defendant's counsel excepted. "I will object to the inference being left to the jury that the state law requires it [the test] because I don't understand the law to be that way." The court responded that once a person is suspected of having operated a motor vehicle while under the influence of an intoxicating liquor "there must be samples taken, if possible, not only for the benefit of the State, but for the benefit of the respondent. One of the two packages in the kit, both in this test and another test, is reserved for the testing by the respondent."

Later, on direct examination of the State's chemist, the State's Attorney elicited the following testimony:

Q. You obtained through the mail two samples, is that correct?

A. Yes, sir.

Q. Were both samples used in your testing?

A. No.

Q. Did you ever call for a second sample?

A. No.

Finally, in its charge to the jury, the court below again referred to the statute under which the samples were taken and restated the requirement that a second sample be taken for the purpose of permitting an independent analysis by the defendant.

Defendant contends that the references by the court, taken in conjunction with the response elicited by the State's Attorney from the chemist that no second sample was ever called for, permitted the jury to draw an improper inference against the defendant from his failure to make an independent analysis. He argues that the possibility of such an inference constituted error and resulted in a denial of due process under this Court's recent rulings in *State* v. *Conti*, 132 Vt. 83, 315 A.2d 261 (1974) and *State* v. *McSheffrey*, 131 Vt. 329, 306 A.2d 702 (1973).

In *McSheffrey*, evidence had been introduced that two vials had been filled, one of them being for the defendant if he wanted to make an independent analysis. One of the jurors asked, during the prosecutor's closing reply argument, what the analysis of the second vial had shown. The trial court interjected that nothing had been introduced on that issue and that it was not for the jury's consideration. Nevertheless, the prosecutor went on to say that the second tube had been picked up by defendant's father. Since the defendant introduced no evidence of any independent analysis, the jury was permitted to draw an improper inference against him which this Court held was improper, prejudicial, and threatened his right to a fair trial:

> The purpose and policy of the statute is to protect the defendant and not to manufacture evidence in favor of the state. Nor does it impose an obligation on the defendant to testify what he did concerning a sample obtained by him. And no inference may be drawn against the defend-

ant by the court, prosecutor or jury if he does pick up his sample. [*State* v. *McSheffrey, supra,* 131 Vt. at 336.] We noted the lower court's failure to take appropriate action in its instructions to overcome the likelihood of prejudice and, invoking the "glaring error" rule of *State* v. *Morrill,* 127 Vt. 506, 253 A.2d 142 (1969), ordered a reversal and remand despite the failure of defendant's counsel to object to the prosecutor's improper argument.

In the subsequent *Conti* decision, the prosecutor had asked a State Trooper, in reference to the second vial, "[d]o you know what he [the defendant] could have done with it?" The question was allowed over the objection of defendant's counsel, as was a later inquiry as to whether the defendant had ever picked up the tube. The trooper responded that the vial had never been picked up and that it had been discarded at the end of the statutory period. Both parties debated the matter in final argument. The court instructed the jury that the law required that a second sample be taken so that the defendant could conduct an independent analysis "at his option" but "[t]he fact that he has not asked for it should not be held against him." No objection to the instructions was made.

The inference which the jury was erroneously permitted to draw in *Conti* differed slightly from that in *McSheffrey* in that it stemmed not from defendant's failure to introduce evidence of an independent analysis after having picked up the sample, but rather from his failure to ever pick the second sample up. Yet it was held that "no inference can be drawn against the defendant if he does not pick up the sample which the statute says shall be retained for his benefit." *State* v. *Conti, supra,* 132 Vt. at 86. Reversal was required because this inference had been presented first by questions posed by the prosecutor, reiterated in the closing arguments of counsel, and finally aggravated by the court's instructions which "again placed before the jury the very statute which we have held is to protect the defendant, but which was introduced through the evidence of the state." *Id.* at 87. It was emphasized that the court should have made it unmistakably clear to the jury that evidence as to whether or not the defendant picked up the second sample was not admissible, should be disregarded, and should not be taken into consideration to determine guilt or innocence.

The case at bar presents a factual hybrid of the *Conti* and *McSheffrey* cases. As in *McSheffrey,* no objections were raised at trial concerning the alleged errors, and no attempt at a curative instruction was made by the trial court. As in *Conti,* the inference was based upon a failure to pick up the sample, and the court aggravated the error by instructing the jury on the statutory requirement that a sample be made available for the defendant's independent analysis. An important common denominator in all three cases, however, was the State's introduction of evidence concerning the defendant's use, or nonuse, of a statutory right which was provided for his protection. The identical composite result in each instance was the compromise of the defendant's right to a fair trial, and this type of "glaring error", present in the case at bar, is cognizable despite the absence of timely objections below. *See State* v. *McSheffrey, supra,* 131 Vt. at 335, 336.

But the State contends that this case is distinguishable from the prior decisions because the defendant here invited the errors, if any, himself. Specific reference is made first to the aforementioned colloquy between Trooper Abbey and defendant's counsel and to the latter's objection to any inference that a chemical test was required to be taken. This objection, it is urged, prompted the court's first reference to the statutory requirement that a second sample be made available for independent analysis by the defendant at his option. We do not agree that such an explanation was necessary. The objection was to the inference that *any* test was required and the court, in framing a proper response, needed only to recite that portion of the statute which mandated the taking of samples. The additional reference to the statutory provision relating to the defendant's optional independent analysis was unnecessary and improper.

The State also argues that the question which it asked the chemist as to whether the second sample had been called for was invited by earlier questions posed by defendant's counsel during cross-examination of State Trooper Marshall. Curious as to the amount of urine left in one sample, defendant's counsel asked Marshall where the sample had been produced from. Marshall responded that "the State chemist brought it with him this morning." We fail to see any justifiable connection between this line of inquiry and the subsequent impermis-

sible question as to whether the defendant's sample had been called for.

Finally, the State maintains that the lower court's reference in its instructions to the second sample and its purpose was necessitated by the erroneous impression of defendant's counsel, conveyed late in the trial, that the State had an affirmative burden to *provide* the defendant with his own sample. The court's instruction, it is argued, was only correcting this mistaken remark and making it clear that the second sample was only to be made "available" to the defendant to analyze independently at his option. This contention has some merit, but if this was the proper purpose of such an instruction, the court clearly did not go far enough. As was stated in *Conti*, the court should have made it unmistakably clear that evidence as to whether or not the defendant actually exercised his option was inadmissible and should be disregarded. *State* v. *Conti, supra*, 132 Vt. at 88. Moreover, it is important to note that this last alleged "invitation" by defendant's counsel occurred subsequent to the other erroneous references previously addressed. The damage had already been done.

We are constrained to conclude that the transcript, when viewed in its entirety, reveals that the jury was erroneously permitted to draw an impermissible inference against the defendant which cannot be excused under the doctrine of "invited error." Although defendant's counsel may have been mistaken in his understanding of certain aspects of the applicable law, clarification of these issues did not require reference to those areas of the statute which we have previously held to be beyond the scope of proper comment or inquiry.

This case was tried before the *McSheffrey* and *Conti* decisions were handed down, and the purpose and policy of the statute in question had thus not yet been set forth by this Court. Nevertheless, as we noted in *Conti*, the legislative purpose—to protect the defendant and not to manufacture evidence in favor of the State—has been the same since the statute was enacted. Defendant is entitled to a trial free from the taint of impermissible and prejudicial inference.

*Reversed and remanded.*