<u>**ENTRY ORDER**</u>

SUPREME COURT DOCKET NO. 2014-462

DECEMBER TERM, 2014

|  |  |  |
|---|---|---|
| | } | APPEALED FROM: |
| State of Vermont | } | |
| | } | |
| v. | } | Superior Court, Rutland Unit, |
| | } | Criminal Division |
| Chad E. Morris | } | |
| | } | DOCKET NO. 1582-11-14 Rdcr |
| | } | |
| | } | Trial Judge: Thomas A. Zonay |

In the above-entitled cause, the Clerk will enter:

In this bail appeal, defendant Chad E. Morris challenges the superior court's imposition of a condition of pretrial release requiring that he give a surety bond or cash of $100,000. Defendant argues that under the facts of this case, a bail requirement in this amount violates the statutory requirement that conditions of release must be the "least restrictive combination of . . . conditions which will reasonably assure the appearance of [defendant] as required" in court. 13 V.S.A. § 7554(a)(1). We affirm.

The transcripts and documents in the trial court record, including affidavits of the investigating police officers, reflect the following, which is uncontested for purposes of this appeal.[1]

In the very early-morning hours of November 1, 2014, police received a complaint from a neighbor about a noisy fight in an apartment in Clarendon. Shortly thereafter, a trooper arrived at the unit, where defendant lived with his girlfriend, and saw defendant's girlfriend being treated by ambulance workers for injuries. The trooper noted that the girlfriend had blood on her hands and face and was shaking and crying. By that time, defendant had already left the scene. The trooper interviewed the girlfriend, who told him that defendant had returned home from a bar intoxicated, and she demanded that he leave the residence and return the keys. In the ensuing heated argument and physical altercation, defendant advanced on the girlfriend in a threatening way and the girlfriend struck him in an attempt to get him to leave. Defendant stated "I'll fucking kill you," hit her in the face several times, bloodying her nose and injuring her arm and

---

[1] In his motion to reduce bail below, defendant conceded that "[t]he weight of the evidence, at the present [time], is sufficient to survive" a motion to dismiss for lack of a prima facie case. See V.R.Cr.P. 12(d); see also 13 V.S.A. § 7554(g) ("Information stated in, or offered in connection with, any [conditions-of-release] order . . . need not conform to the rules pertaining to the admissibility of evidence in a court of law.").

back, and choked her until she "crumbled on the floor gasping for breath." Defendant then took her cell phone, preventing her from calling police or an ambulance, and left the scene.

Seven hours later, police responded to a 911 call from a neighbor reporting a second ongoing fight at the same apartment. Defendant had returned to the apartment and engaged in a loud verbal argument with the girlfriend. Defendant threw a ceramic coffee mug into the sink, where it broke, and left the apartment again to go to work. Police arrived soon after and the girlfriend reported that in addition to the incident in the early-morning hours of that day, defendant had choked her in the past; had threatened to kill her and her son in the past; had access to firearms; and was "violently and constantly" jealous and controlling. While police remained at the apartment, defendant telephoned her around six times, leaving several voicemail messages, stating that he "would stick a knife in her" and that she was a "dumb bitch" and "fucking cunt."

Less than an hour after the second incident, police arrested defendant at his job site. Defendant confirmed that he had driven home that night from a bar and was "pretty buzzed." He stated that the girlfriend had struck him, that he had tried to restrain the girlfriend only so he could collect personal property and leave, and that he could not remember other details because he had been intoxicated. Police served defendant with a relief-from-abuse order obtained by the girlfriend that morning. Defendant stated "I'm going to string her by the neck and fuck her in the ass" and told the arresting trooper to "stick [the relief-from-abuse order] up my ass."

Defendant was charged by information two days later with one count of felony first-degree aggravated domestic assault, 13 V.S.A. § 1043(a)(1), one count of misdemeanor interference with access to emergency services, id. § 1031; and one count of operating a motor vehicle while license was suspended for the sixth or subsequent time, id. § 674(a)(2). Defendant was arraigned the same day and pleaded not guilty. The court imposed nine nonmonetary conditions of release (which defendant does not contest in this appeal) and a requirement that defendant give a surety bond or cash of $100,000. Id. § 7554(a)(1)(E).

Weighing in favor of imposing a higher bail requirement, the court considered: (1) the nature and seriousness of the charged offenses, most significantly the aggravated domestic assault charge, which carries a maximum penalty of fifteen years' imprisonment; (2) the "strong" weight of the evidence and defendant's concession that the state had a prima facie case; (3) the circumstances leading up to the incidents of November 1 and defendant's "character and mental condition," including defendant's possible drug use and the likelihood that defendant had previously engaged in "extreme" actual or threatened violence toward the girlfriend and her son, and had access to firearms; (4) defendant's multiple voicemail messages to the girlfriend and comments to arresting officers, which the court found were not only "crude" and "coarse" but also "direct" threats to commit violent acts against the girlfriend; (5) defendant's twelve past misdemeanor convictions and two past felony convictions (a 2005 conviction of possession of more than 200 milligrams of heroin and a 2000 sexual assault conviction), which would likely

affect possible sentencing; and (6) defendant's past revocation of probation in 2002 following a violation of his terms of probation.[2]

Weighing in favor of imposing a lower bail requirement, the court considered that defendant had strong community ties, was a lifelong resident of the community, lived near his parents and brother and would, if released before trial, live in his parents' home,[3] had been self-employed for the past two years as a construction worker and roofer, had no significant failures to appear despite his extensive criminal history, and had properly registered with the sex-offender registry each year since he was convicted of sexual assault in 2000.

Weighing all the factors, the court determined that "a risk of non-appearance significantly outweigh[ed] the other factors" and imposed a $100,000 bail requirement as well as the nine nonmonetary conditions of release.

Following the arraignment, defendant moved on December 8 for a bail-review hearing and for a reduction in the monetary bail requirement. See 13 V.S.A. § 7554(d)(1) ("A person for whom conditions of release are imposed and who is detained as a result of his or her inability to meet the conditions of release . . . shall . . . be entitled to have the condition reviewed by a judge in the court having original jurisdiction over the offense charged."). At the December 15 bail-review hearing, defendant argued that the nonmonetary conditions of release imposed by the court were sufficient, and that "at this point it appears that a $100,000 bail requirement would be unnecessary to reasonably assure his appearance." Defendant suggested that a $10,000 secured appearance bond would be an "appropriate . . . lesser amount" that would be "sufficient to reach his surety." Both the State and defendant largely renewed their arguments raised at the arraignment, with defendant emphasizing that defendant's parents had made a commitment to notify police if defendant was not compliant with conditions of release. The trial court denied the motion to reduce bail and maintained the bail amount at $100,000, again determining that "[w]hen the Court looks at everything in this case it notes that . . . [the Section] 7554 factors—the seriousness, nature and circumstances, the weight of the evidence, Defendant's prior record and Defendant's character and mental condition—weigh heavily in favor of significant bail being necessary to reasonably assure his appearance."

Defendant appealed the cash bail requirement. See 13 V.S.A. § 7556(b).

---

[2] The court considered, but declined to accept the State's arguments that high bail was justified because defendant "fled the scene," and that defendant had failed to appear in connection with a charge in 2000. On the first point, the court commented that on "the available information while he may have had an idea that the police might show up . . . the Court can't find that he 'fled' . . . from the police at that moment." On the second point, the court found that the 2000 failure to appear was a post-conviction failure to appear, "presumably after needing to pay a surcharge," and was thus not probative of the likelihood that defendant would abscond.

[3] See 13 V.S.A. § 7554(a)(2)(A) (allowing court to order, as condition of release, that defendant be "[p]lace[d] in the custody of a designated person or organization agreeing to supervise him").

Generally, a person charged with an offense "shall be ordered released on personal recognizance or upon the execution of an unsecured appearance bond" before trial, "unless the judicial officer determines that such a release will not reasonably assure the appearance of the person as required." Id. § 7554(a)(1). "In determining whether the person presents a risk of nonappearance, the judicial officer shall consider, in addition to any other factors, the seriousness of the offense charged and the number of offenses with which the person is charged." Id. If the court determines that there is a risk of nonappearance, the court must impose the least restrictive condition or combination of conditions "which will reasonably assure the appearance of the person as required." Id. Such conditions may include the requirement that defendant execute a surety bond or deposit cash. Id. § 7554(a)(1)(E). On appeal, this Court will affirm the superior court's bail determination if it is "supported by the proceedings below." Id. § 7556(b).

On appeal, defendant emphasizes that he has strong community ties and has shown no inclination to abscond in the past. He notes that concerns about protection of the public may warrant protective conditions on release, but do not support the imposition of a bail requirement. Defendant further argues the trial court improperly based the amount of bail solely on the seriousness of the charge and that the bail amount is unsupported because the superior court did not conduct any "articulated analysis" of why $100,000—rather than some lesser amount—was the least restrictive condition that would reasonably assure defendant's appearance, and did not take into account defendant's individual financial circumstances. Defendant argues that while a detailed financial analysis is not necessary, the court must link the factors considered to the ultimate amount set.

We agree that the purpose of bail is to mitigate the risk of nonappearance, and that bail may not be set to punish the defendant or to protect the public. State v. Brown, 2005 VT 104, ¶ 10, 179 Vt. 22, 26. Protection of the public may be accomplished through other conditions listed in 13 V.S.A. § 7554(a)(2), or in accordance with the requirements of 13 V.S.A. § 7553a. If the trial court had required substantial cash bail on account of its concerns for public safety, its order would contravene the statutes governing conditions of pretrial release.

However, we conclude that the trial court's imposition of substantial cash bail was supported by its findings and conclusions concerning the risk of nonappearance. Notwithstanding defendant's acknowledged ties to the community and past history of appearing, given the seriousness of the charge, the strength of the evidence, defendant's substantial criminal history, and defendant's behavior in connection with and subsequent to the alleged offense, the trial court was within its discretion in concluding that substantial cash bail was required to secure his appearance. Defendant's repeated threatening telephone messages and direct threats of violence in the presence of a state trooper demonstrate a threat to public safety, but also reflect on his character and mental condition—factors that bear on defendant's risk of nonappearance. See 13 V.S.A. § 7554(b) ("Recent history of actual violence or threats of violence may be considered by the judicial officer as bearing on the character and mental condition of the accused.").

With respect to the amount of the bail requirement, the trial court's minimal findings and discussion concerning the amount of bail, as opposed to the necessity of bail, make this a close case. On the one hand, when setting such high bail for an indigent defendant, a trial court must

cite some evidentiary support for the amount set. <u>State v. Duff</u>, 151 Vt. 433, 436 (1989) (lack of evidentiary support for bail requirement of $150,000 for indigent defendant required conclusion that the amount could not be justified under 13 V.S.A. § 7554). On the other hand, a defendant "need not be capable of meeting bail in order for the amount to be supported by the record." <u>Id</u>. In this case, the trial court weighed the various factors and found that they "weigh heavily in favor of <u>significant</u> bail being necessary to reasonably assure [defendant's] appearance." In contrast to the defendant in <u>State v. Duff</u>, defendant here has a substantial prior criminal record and the record contains evidence of behavior in connection with and following the alleged offense that casts serious doubt on his stability and condition. The court here was cognizant that the amount being set was substantial and appropriately justified it on the record. See <u>State v. Girouard</u>, 130 Vt. 575, 581 (1972) ("The determination of the amount of bail set is one of judicial discretion, controlled, of course, by certain guidelines. To maintain error, the defendant must show an abuse or withholding of discretion by the court." (citations omitted)). At some point a court's bail requirement may be so out of synch with a defendant's conceivable ability to meet bail that it cannot be fairly considered to be the least restrictive means of securing a defendant's appearance, but on this record the trial court did not exceed its discretion.

  <u>Affirmed</u>.

             FOR THE COURT:


             _____

             Beth Robinson, Associate Justice